WO

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Deborah Northcutt, et al.,<br>Plaintiffs,<br>v.<br>Gen Digital Incorporated, et al.,<br>Defendants. | No. CV-25-02768-PHX-DWL<br>**ORDER** |

In this putative class action under the Employee Retirement Income Security Act of 1974 ("ERISA"), Deborah Northcutt, Jamin Bracken, Scott Wolstenhom, and Trent Lyght (together, "Plaintiffs"), on behalf of the Gen Digital Inc. 401(k) Plan ("the Plan"), allege that Gen Digital Inc. ("Gen Digital"), the Board of Directors of the Company ("the Board"), and the Employee Benefits Administrative Committee ("the Committee") (collectively, "Defendants") breached various fiduciary duties in relation to the Plan.

Now pending before the Court is Defendants' motion to dismiss two of Plaintiffs' claims. (Doc. 17.) For the reasons that follow, the motion is granted.

## BACKGROUND

I. Relevant Factual Background

The following facts, presumed true, are derived from Plaintiffs' operative pleading, the First Amended Complaint ("FAC"). (Doc. 11.)[1]

---

[1] The FAC includes several allegations that relate to Counts One and Two, which Defendants have not moved to dismiss. The Court has omitted those allegations.

A. **The Parties**

Plaintiffs, during their respective employment periods, each participated in the Plan and paid fees associated with their accounts. (*Id.* ¶¶ 20-23.)

Gen Digital "is the Plan Sponsor for the Plan." (*Id.* ¶ 27.)[2] Gen Digital "is a global company dedicated to powering Digital Freedom through its trusted consumer brands including Norton, Avast, LifeLock, MoneyLion, and more." (*Id.*, footnote omitted.)

Gen Digital, "acting through its Board," "appointed the Committee to, among other things, prudently manage the Plan, including overseeing the fees paid by the Plan and its participants." (*Id.* ¶¶ 30, 33.) The Committee "manage[d] the Plan." (*Id.* ¶ 36.)

B. **The Plan**

The Plan "is a defined contribution plan covering substantially all eligible employees of Gen Digital." (*Id.* ¶ 50.) "[T]he purpose of the Plan is to provide benefits for Participants and their Beneficiaries as a result of the death, Disability, or other Termination of Employment of such Participants." (*Id.* ¶ 51.) "In general, the Plan covers substantially all employees of Gen Digital from the first day of employment." (*Id.* ¶ 52.)

1. <u>Contributions</u>

"[E]ach Eligible Participant may elect to have a percentage (in multiples of one percent (1%), but not exceeding fifty percent (50%)) of his Compensation for such Plan Year contributed to the Trust on a salary-reduction basis in an amount not to exceed the 'applicable dollar amount' (as provided in Section 402(g)(1)(B) of the Internal Revenue Code) for the calendar year." (*Id.* ¶ 53.) "The Plan also permits the automatic enrollment of eligible employees in the Plan." (*Id.* ¶ 54.)

"The Plan allows participants to make catch-up contributions and Roth elective deferral contributions." (*Id.* ¶ 55.)

"The Plan also provides for employer matching contributions." (*Id.* ¶ 56.) "The Participating Companies shall make Matching Contributions for each payroll period, on

[2] Gen Digital became "the Plan Sponsor effective November 7, 2022." (Doc. 11 at 8 n.7.) NortonLifeLock Inc. was the "Plan sponsor from November 4, 2019 to November 6, 2022," and Symantec Corporation was the Plan Sponsor" before that. (*Id.*)

behalf of each Eligible Participant who makes an Elective Deferral Contribution for such payroll period, equal to fifty cents ($.50) for each one dollar ($1) of any Elective Deferral Contributions made by such Eligible Participant, up to six percent (6%) of such Eligible Participant's compensation for such payroll period." (*Id.* ¶ 57.)

"Like other companies that sponsor 401(k) and 403(b) plans for their employees, Gen Digital enjoys both direct and indirect benefits by providing matching contributions to Plan participants. Employers are generally permitted to take tax deductions for their contributions to 403(b) plans at the time when the contributions are made." (*Id.* ¶ 58.) The FAC alleges that "Gen Digital also benefits in other ways from the Plan's matching program. It is well-known that '[o]ffering retirement plans can help in employers' efforts to attract new employees and reduce turnover.'" (*Id.* ¶ 59, citation omitted.)

2. Vesting

"Participants are automatically vested in any contributions they made to their accounts themselves." (*Id.* ¶ 61.) "A Participant's Matching Contributions Account shall be subject to [a] vesting schedule based upon the date on which Matching Contributions were credited to such Account and upon the number of Years of Service that the Participant has completed as of the date of his Termination of Employment." (*Id.* ¶ 62.)

3. Forfeiture

"Upon the Termination of Employment of a Participant who has not become fully vested, who has not incurred a Disability, or who has not attained Early Retirement or Normal Retirement, the amounts in such Participant's Matching Contributions Account, minus the Vested Interest in such Matching Contributions Account . . . shall be treated as having been forfeited." (*Id.* ¶ 63.)

"Upon such Forfeiture, the Sponsoring Company shall determine, in its sole discretion, whether the Non-Vested Amount shall be used to reduce Matching Contributions to the Plan, or whether the Non-Vested Amount shall be used to pay administrative expenses of the Plan." (*Id.* ¶ 64.)

"Throughout the Class Period, [Gen Digital] chose to use funds in the forfeiture

account to offset employer matching contributions." (*Id.* ¶ 65.) "The Plan pays substantially all the Plan's expenses." (*Id.* ¶ 66.)

C. **The Challenged Conduct**

The FAC alleges that, "[d]uring the Class Period, [Gen Digital] breached its ERISA fiduciary duties by failing to implement and/or adhere to a prudent process to consider and determine the fair and reasonable utilization of Plan assets, namely forfeitures, and by misusing forfeitures for [Gen Digital]'s own benefit and to the detriment of Plan participants." (*Id.* ¶ 93.) The FAC also alleges that, "[a]s with any exercise of discretion by Plan fiduciaries, [Gen Digital] had an obligation to Plan participants to prudently and loyally determine how to utilize forfeitures. At the discretion of [Gen Digital], in its fiduciary capacity, forfeitures may be used to either pay the Plan's expenses or reduce [Gen Digital]'s contributions to the Plan." (*Id.* ¶ 94.)

On August 27, 2024, "[i]n an effort to discover information about the establishment and operation of the Plan, Plaintiffs sent a written request pursuant to Section 104(b)(4) of ERISA to the Plan administrator." (*Id.* ¶ 95.)

On September 27, 2024, "the Plan administrator provided certain documents." (*Id.* ¶ 96.) "None of the documents or information provided by the Plan administrator demonstrated that [Gen Digital] employed a deliberative process regarding the disposition of the Plan's forfeitures." (*Id.*)

On December 23, 2024, "the Plan administrator supplemented its production of documents pursuant to Plaintiffs['] request. The additional documents provided by the Plan administrator still did not demonstrate that [Gen Digital] employed a prudent, deliberative process regarding the disposition of the Plan's forfeitures." (*Id.* ¶ 97.)

The FAC alleges that "[u]sing forfeitures to pay Plan expenses would be in the participants' best interest because that option would reduce or eliminate amounts otherwise charged to their accounts to cover such expenses." (*Id.* ¶ 98.)

"In deciding between using forfeitures to benefit [Gen Digital] or using forfeitures to benefit the participants, [Gen Digital] is presented with a conflict of interest in

administering the Plan and managing and disposing of the Plan's assets." (*Id.* ¶ 99.) The FAC alleges that, "[d]espite the conflict of interest presented by this decision, [Gen Digital] failed to undertake any investigation into which option was in the best interest of the Plan's participants and beneficiaries." (*Id.* ¶ 100.)

Gen Digital "did not, for example, investigate whether there was a risk that [it] would be unable to satisfy its contribution obligations if forfeitures were used to pay Plan expenses, or evaluate whether there were sufficient forfeitures to eliminate the Plan's expenses charged to participants and still offset a portion of [Gen Digital]'s own contribution obligations, as a prudent person would have done." (*Id.* ¶ 101.) Gen Digital "also failed to consult with an independent, non-conflicted decision-maker, or an independent fiduciary, to advise it in deciding upon the best course of action for allocating the forfeitures in the Plan, as a prudent person would have done." (*Id.* ¶ 102.)

"ERISA requires fiduciaries to manage the Plan's assets solely in the interest of participants. At all times relevant, the Plan permitted forfeitures to be used to pay Plan expenses, which otherwise would be charged to participants." (*Id.* ¶ 103.) Gen Digital "consistently declined to use the Plan's assets for such purpose during the putative Class Period. Since at least the beginning of the Class Period, [Gen Digital] never allocated even a single dollar of forfeitures to be used to offset Plan expenses being charged to participants." (*Id.*) Gen Digital "has used every dollar of forfeitures to save the out-of-pocket costs to [Gen Digital] of making the employer contributions to the Plan." (*Id.*)

The FAC alleges that Gen Digital "has improperly used forfeited non-vested Plan assets for [Gen Digital]'s benefit to reduce future employer contributions instead of using the funds to benefit Plan participants." (*Id.* ¶ 104.)

Attaching the chart below, the FAC alleges that "[a]ccording to the Plan's Form 5500s, the following represents the annual forfeitures and the . . . amount of the forfeitures used to offset [Gen Digital]'s contributions to the Plan, while allocating zero dollars to offset Plan administration costs being paid by the participants":

| Plan Year | Forfeiture Amount | Amts. Used to Offset Employer Contributions | Amts Used to Pay Admin Costs |
|---|---|---|---|
| **2019** | $400,000 | $771,000 | $0 |
| **2020** | $970,000 | $2,889,000 | $0 |
| **2021** | $990,000 | $757,000 | $0 |
| **2022** | $1,564,000 | $915,000 | $0 |
| **2023** | $140,000 | $1,364,000 | $0 |
| **2024** | Unknown | Unknown | Unknown |
| **Total** | **$4,064,000** | **$6,696,000** | **$0** |

(*Id.* ¶ 105.)

The FAC further alleges that Gen Digital "failed to implement/adhere to a prudent process to ensure that the forfeitures, which constitute Plan assets, were fairly and reasonably utilized"; "lacked any process to assess the options for applying forfeitures and put its own interests in saving out-of-pocket costs above the interests of the Plan and its participants"; and "failed to consider any guidance, benchmarks, or best practices that a prudent fiduciary would review." (*Id.* ¶¶ 106-08.) "In short, [Gen Digital] failed to exercise any discernible process whatsoever." (*Id.* ¶ 108.)

"By failing to perform its fiduciary responsibilities, [Gen Digital] allowed substantial Plan assets to be mishandled. As a result, the Plan and its participants suffered harm, including but not limited to increased costs and diminished account values." (*Id.* ¶ 109.)

II. <u>Procedural Background</u>

On August 4, 2025, Plaintiffs initiated this action. (Doc. 1.)

On November 17, 2025, Defendants moved to dismiss the complaint. (Doc. 10.)[3]

On December 1, 2025, Plaintiffs filed the FAC. (Doc. 11.) The FAC asserts four causes of action: (1) "Prohibited Transactions (Against All Defendants Concerning Great-West)" (*id.* ¶¶ 110-15); (2) "Prohibited Transactions (Against All Defendants Concerning

[3] Defendants' initial motion to dismiss was rendered moot by Plaintiffs' subsequent filing of the FAC. (Doc. 14.)

Fidelity)" (*id.* ¶¶ 116-21); (3) "Breach of Fiduciary Duty of Prudence (Asserted against [Gen Digital])" (*id.* ¶¶ 122-28); and (4) "Failure to Adequately Monitor Other Fiduciaries (Asserted against Gen Digital and the Board Defendants)" (*id.* ¶¶ 129-35).

On December 23, 2025, Defendants filed the pending motion to dismiss Counts Three and Four of the FAC. (Doc. 17.)[4] That motion is now fully briefed. (Docs. 18, 20.)[5] After the motion became fully briefed, Plaintiffs filed a notice of supplemental authority (Doc. 21)[6] and Defendants filed two such notices (Docs. 23, 24).

III. Judicial Notice

Defendants attach 12 exhibits to their motion to dismiss. (Doc. 17-2 at 1 [Exhibit Index].) Exhibit A is a copy of the "Symantec Corporation Section 401(k) Plan ('Plan'), as amended and restated, effective as of January 1, 2015" (i.e., the Plan) (*id.* at 1, 3-77); Exhibit B is the "Fourth Amendment to the Plan, executed on December 22, 2016" (the "Fourth Amendment") (*id.* at 1, 79-87); Exhibit C is the "Sixteenth Amendment to the Plan, executed on December 17, 2024" (the "Sixteenth Amendment") (*id.* at 1, 89-90); Exhibits D through I are excerpts of the Plan's Form 5500 reports from the 2019 through 2024 calendar years (*id.* at 1, 92-101, 103-12, 114-23, 125-34, 136-45, 147-56); Exhibit J is the "August 27, 2024 letter to the Plan Administrator from James A. Maro of Capozzi Adler, P.C." (*id.* at 1, 158-65); Exhibit K is the "September 27, 2024 letter to James A.

---

[4] Defendants' motion argues that "Plaintiffs' prohibited transaction claims (Counts I and II) also fail as a matter of law" but "Defendants intend to answer Counts I and II, plead the § 1108(b)(2) exemptions as affirmative defenses, and move to compel a reply to the answer under Rule 7(a)(7), after which [D]efendants may move for judgment on the pleadings under Rule 12(c)." (Doc. 17 at 8 n.6, citation omitted.)

[5] Defendants' request for oral argument is denied because the issues are fully briefed and oral argument will not aid the decisional process. *See* LRCiv 7.2(f).

[6] On February 24, 2026, Defendants filed a response accusing Plaintiffs of "improperly us[ing] the Notice to advance sur-reply arguments." (Doc. 22 at 2.) To the extent Plaintiffs' notice of supplemental authority advances sur-reply arguments, the Court will disregard them while still taking notice of Plaintiffs' supplemental authority. *Cf. ThermoLife Int'l LLC v. Aesthetic Distribution, LLC,* 2020 WL 12581996, *1 n.2 (D. Ariz. 2020) ("[F]iling a Notice of Supplemental Authority with a copy of or a citation to a recently published case is proper; including a memorandum with the Notice explaining why the case is relevant or filing a Response to a Notice that includes argument is not. Thus, the Court will not consider the improper arguments raised in the parties' Notices and Response; however, the Court has reviewed the cases that were cited in the Notices of Supplemental Authority.").

Maro of Capozzi Adler, P.C. from Lisa A. Tavares of Venable LLP" (*id.* at 1, 167-68); and Exhibit L is the "December 23, 2024 letter to James A. Maro of Capozzi Adler, P.C. from Lisa A. Tavares of Venable LLP" (*id.* at 1, 170).

A. **The Parties' Arguments**

Defendants argue that "courts 'must consider' documents the complaint incorporates by reference or that are subject to judicial notice" and that the FAC "expressly relies on the Plan's publicly available Form 5500 filings, the Plan Document and amendments, and correspondence related to [P]laintiffs' pre-litigation request for documents—copies or excerpts of which are attached as Exhibits A-L." (Doc. 17 at 7 & n.5.)

In response, Plaintiffs only "object to Defendants' filing and interpretation of the Sixteenth Plan Amendment, which is not referenced in the [FAC] nor provided to Plaintiffs." (Doc. 18 at 7 n.2.)

In reply, Defendants argue that Plaintiffs "acknowledge that the Plan was amended in January 2024 to prioritize the use of forfeitures to reduce employer matching contributions over the payment of Plan administrative expenses." (Doc. 20 at 5 n.3.) Defendants argue that Plaintiffs' "objection to considering this Plan amendment solely because it was not previously furnished to them is meritless. The amendment, whose authenticity [P]laintiffs do not question, was executed *after* [Gen Digital] furnished Plan documents to [P]laintiffs under 29 U.S.C. § 1024(b)(4), and courts consider authentic plan documents in ERISA fiduciary breach cases as a matter of routine." (*Id.*)

B. **Analysis**

"When ruling on a Rule 12(b)(6) motion to dismiss, if a district court considers evidence outside the pleadings, it must normally convert the 12(b)(6) motion into a Rule 56 motion for summary judgment, and it must give the nonmoving party an opportunity to respond." *United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir.2003). "A court may, however, consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without

converting the motion to dismiss into a motion for summary judgment." *Id.* at 908. A court may take judicial notice of facts "not subject to reasonable dispute" because they are either "(1) generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201. Additionally, under the incorporation-by-reference doctrine, a district court may "consider documents 'whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading.'" *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 986 (9th Cir. 1999).

Applying these standards, and in light of Plaintiffs' non-opposition, the Court may consider Exhibits A-B and D-L under the incorporation-by-reference and/or judicial notice doctrines. *Cf. Sabreda v. Snider*, 2026 WL 2015259, *5 (D. Ariz. 2026) (agreeing to consider certain exhibits proffered in relation to a motion to dismiss because "[p]erhaps most important, neither side objects to the [exhibits] proffered by the other side") (citing *United States v. Sineneng-Smith*, 590 U.S. 371, 375-76 (2020)). The Court will not, however, consider Exhibit C—the Sixteenth Amendment—because it is not referenced anywhere in the FAC and does not form the basis of Plaintiffs' claims. It may be true that Plaintiffs "acknowledge that the Plan was amended in January 2024" (Doc. 20 at 5 n.3), but this acknowledgment is not the same thing as a concession that Plaintiffs' claims rely on Exhibit C in the manner required to trigger incorporation by reference.

## DISCUSSION

I. Legal Standard

Under Rule 12(b)(6), "to survive a motion to dismiss, a party must allege sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *In re Fitness Holdings Int'l, Inc.*, 714 F.3d 1141, 1144 (9th Cir. 2013) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "[A]ll

well-pleaded allegations of material fact in the complaint are accepted as true and are construed in the light most favorable to the non-moving party." *Id.* at 1144-45 (citation omitted). However, the court need not accept legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678-80. Moreover, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678. The court also may dismiss due to "a lack of a cognizable legal theory." *Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1065 (9th Cir. 2015) (citation omitted).

II. Analysis

A. **Breach Of Fiduciary Duty Of Prudence (Count Three)**

"To state a claim for breach of fiduciary duty under ERISA, a plaintiff must allege that (1) the defendant was a fiduciary; and (2) the defendant breached a fiduciary duty; and (3) the plaintiff suffered damages." *Bafford v. Northrop Grumman Corp.*, 994 F.3d 1020, 1026 (9th Cir. 2021) (citing 29 U.S.C. § 1109(a)).

The FAC alleges that Gen Digital "was a fiduciary of the Plan within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1102(21)(A), in that it exercised discretionary authority or control over the administration and/or management of the Plan or disposition of the Plan's assets." (Doc. 11 ¶ 123.) The FAC alleges that Gen Digital "breached these fiduciary duties in multiple respects as discussed throughout this complaint." (*Id.* ¶ 125.) Specifically, the FAC alleges that Gen Digital "failed to employ a prudent process for the administration and use of Plan forfeitures"; that Gen Digital "did not analyze, evaluate, or otherwise consider how forfeiture amounts should be applied for the exclusive benefit of Plan participants and beneficiaries"; and that "[Gen Digital]'s failure to undertake any reasoned or diligent process with respect to forfeitures constitutes a breach of the duty of prudence in violation of ERISA § 404(a)(1)(B)." (*Id.*)

1. Gen Digital As Fiduciary

a. **The Parties' Arguments**

Defendants argue that "Plaintiffs' imprudence claim fails out of the gate because the decision how to allocate Plan forfeitures is *not* a fiduciary one." (Doc. 17 at 8.)

Defendants argue that "Plaintiffs here are challenging the settlor decision about the benefits the Plan offers to participants, including whether and to what extent the sponsor will cover administrative expenses and provide matching contributions." (*Id.* at 9.) Defendants emphasize that "[t]he Plan expressly permits [Gen Digital] to reallocate forfeitures to *either* Plan administrative expenses *or* employer matching contributions—without prioritizing one use over the other." (*Id.*) Defendants contend that "[w]hile [P]laintiffs allege this is a 'fiduciary' decision, the law is clear that these types of plan sponsor decisions are made in a *non-fiduciary*, settlor capacity." (*Id.*) Defendants also argue that "the ultimate decision by [Gen Digital] to use forfeitures for one purpose over another" is not "a fiduciary one" because "ERISA does not require plan sponsors to provide matching contributions or pay plan administrative expenses; any such provision is a non-fiduciary design decision, as explained above." (*Id.*) "Thus, by claiming [Defendants] should have allocated forfeitures to offset Plan administrative expenses instead of matching contributions—thereby increasing the value of contributions [Gen Digital] must pay out of pocket—[P]laintiffs are merely attacking the manner in which the Plan is designed." (*Id.*) Defendants also argue that the fact Gen Digital "had the *option* to use forfeitures to reduce Plan administrative expenses is immaterial" because "[t]he Plan says that all 'reasonable costs, charges and expenses incurred in the administration of the Plan, shall be paid by the Participating Companies or from the assets of the Trust Fund.'" (*Id.* at 10, citing Doc. 17-1 at 26 [The Plan].) Defendants contend that "[t]hat means the sponsor, and the sponsor alone, decides whether it will pay expenses directly; if not, such expenses will be charged against Plan assets (*i.e.*, to participants)." (*Id.*) Defendants argue that a "similar situation was addressed" in *Hutchins v. HP Inc.*, 767 F. Supp. 3d 912 (N.D. Cal. 2025) ("*Hutchins II*"). (*Id.*) "There, the court acknowledged the plan gave the sponsor 'complete and unfettered discretion' over whether to cover plan expenses or pass them on to participants. The court concluded the plan sponsor '*acting as settlor* determines whether, in a given year, plan expenses will be paid by the sponsor or charged to plan participants accounts'—and only if the sponsor decided to 'use those forfeitures to pay plan expenses' could the

administrator, '*acting as fiduciary*,' do so." (*Id.*, cleaned up.) Defendants argue that "[t]he same rationale applies here," and because "Plaintiffs' forfeiture claim does not implicate a fiduciary act," it "therefore must be dismissed." (*Id.*)

In response, Plaintiffs argue that "[a]s a threshold matter, forfeitures are Plan assets. Once forfeitures became Plan assets, ERISA prohibited Defendants from using them to benefit [Gen Digital] at participants' expense. Therefore, the Plan provision stating 'that all reasonable costs, charges and expenses incurred in the administration of the Plan, shall be paid by the Participating Companies or from the assets of the Trust Fund' includes forfeitures." (Doc. 18 at 6, cleaned up.) Next, Plaintiffs argue that when Gen Digital "drafted the Plan and permitted forfeitures to be used for either employer contributions or administrative expenses, it acted as a settlor. However, rather than challenging any decision regarding the design of the Plan (which would be a settlor function), Plaintiffs challenge Defendants' decision regarding how to apply forfeited contributions after they have been paid to the Plan and have become plan assets." (*Id.* at 6-7, cleaned up.) Plaintiffs argue that the existence of discretion to use "forfeitures to offset either employer contributions or administrative costs" is "dispositive" because "Plaintiffs do not challenge Plan design or decision to offer matching contributions" but rather "challenge Defendants' *exercise of fiduciary discretion over Plan assets* in a manner that impermissibly favored [Gen Digital] over participants." (*Id.* at 7.) Plaintiffs argue that "Defendants improperly conflate 'plan sponsor' with 'settlor.' ERISA permits employers (*i.e.*, sponsors) to act in both capacities, but requires that 'the fiduciary with two hats wear only one at a time.'" (*Id.*, citation omitted.) Plaintiffs argue that "[n]othing in the Plan states that forfeiture-allocation decisions must be made solely in a *settlor* capacity, and even delegates the forfeitures decisions to Plan fiduciaries who are not the sponsor." (*Id.*) Plaintiffs contend that "the Court need not decide at this stage whether [Gen Digital]'s authority to instruct the plan's use of forfeitures (Plan assets) makes it a fiduciary as a matter of law, because what matters is that [Gen Digital]'s authority under the plan to make determinations about Plan assets cannot be reconciled with holding that it is a non-fiduciary as a matter of law."

(*Id.* at 8, cleaned up) Plaintiffs seek to distinguish *Hutchins II*, arguing that "[t]he language in *Hutchins* [*II*] explicitly stated that the company's decisions were to be made 'acting as settlor,' without any delegation permitted." (*Id.*, cleaned up.) Plaintiffs conclude that "[h]ere, Defendants exercised discretion over forfeited Plan assets by choosing to reduce [Gen Digital]'s future contribution obligations rather than to defray Plan expenses borne by participants," and "[t]hat decision is fiduciary in nature." (*Id.* at 9.)

In reply, Defendants argue that "Plaintiffs concede, as they must, that they are not challenging [Gen Digital]'s settlor decision to design the Plan to permit allocating forfeitures to either Plan administrative expenses or employer contributions" and that Plaintiffs "attempt to sidestep this reality by arguing they are challenging [Gen Digital]'s 'exercise of fiduciary discretion' about how to allocate 'Plan assets.'" (Doc. 20 at 2.) Defendants contend "there is no meaningful distinction between a sponsor that hardwires into the plan document a requirement that forfeitures always be used the same way (which [P]laintiffs concede is a settlor function) and a sponsor who leaves itself the option in the plan document to make different choices at different times (like [Gen Digital]) here." (*Id.* at 2-3.) Finally, Defendants again cite *Hutchins II*, arguing that it "illustrates this point, and [P]laintiffs cannot evade its application here." (*Id.* at 3.)

b. **Analysis**

"In every case charging breach of ERISA fiduciary duty, . . . the threshold question is . . . whether that person was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint." *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000). "In defining the scope of fiduciary duties under ERISA, courts have drawn a distinction between actions taken as a fiduciary and actions taken as a settlor." *Hutchins v. HP Inc.*, 737 F. Supp. 3d 851, 860 (N.D. Cal. 2024) ("*Hutchins I*"). "An entity is a fiduciary under ERISA to the extent it has or exercises any discretionary authority, control, or responsibility in the management or administration of an ERISA plan." *Bafford*, 994 F.3d at 1025. In contrast, "[s]ettlor duties include decisions 'regarding the form or structure of the Plan such as who is entitled to receive Plan benefits and in what amounts, or how

such benefits are calculated.'" *Hutchins I*, 737 F. Supp. 3d at 860 (quoting *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432 (1999)).

The Plan provides that "[u]pon such Forfeiture, the Sponsoring Company shall determine, in its sole discretion, whether the Non-vested Amount shall be used to reduce Matching Contributions to the Plan, or whether the Non-Vested Amount shall be used to pay administrative expenses of the Plan." (Doc. 17-2 at 53 § 13.6(A).) Defendants argue that "the law is clear that these types of plan sponsor decisions are made in a *non-fiduciary*, settlor capacity." (Doc. 17 at 9.) The Court disagrees.

"Most cases that [have] considered whether forfeiture allocation is a fiduciary function [have] answered the question affirmatively." *Russell v. Illinois Tool Works, Inc.*, 2026 WL 332662, * 3 (N.D. Ill. 2026). One of those cases is *Hutchins I*. There, the court held that "the decision to allocate forfeited amounts is a fiduciary, as opposed to a settlor, function." 737 F. Supp. 3d at 860. The court acknowledged that "the decision to include a Plan term stating that forfeited amounts may be used to reduce employer contributions, to restore benefits previously forfeited, or to pay Plan expenses is a settlor decision because it is a design decision" but emphasized that the challenge was not to the plan itself but to the defendants' "selection of one of the options" under the plan. *Id.* "Understood in this way, Plaintiff attacks not the *decision* to include [the relevant provision in the plan], but Defendants' *implementation* of that decision—that is, Defendants exercised discretion and control over Plan assets and thus were making decisions of Plan administration rather than Plan design." *Id.* at 861.

The Court does not construe *Hutchins II* as casting any doubt on this reasoning, as the court in *Hutchins II* expressly noted that *Hutchins I* "resolved in Plaintiff's favor the question of whether Plaintiff had adequately alleged that Defendant was acting as a fiduciary when it allocated forfeited amounts" and that it was "not revisit[ing] that ruling now." 767 F. Supp. 3d at 921. The court clarified that *Hutchins II* was "focused only on whether Plaintiff has adequately alleged that HP breached its fiduciary duties of loyalty and prudence," *id.*—an issue addressed in Part II.A.2 below—and not on whether the

defendant was acting in a fiduciary or settlor capacity.

Moreover, the outcome in *Hutchins II* appears to have been colored by the fact that, in his amended complaint, the plaintiff "sought to erase discretion because [he] argued that applying forfeitures to plan expenses over employer contributions was the only way for the defendants to be loyal to plan participants and beneficiaries," and accordingly, "a rule allowing only payment of plan expenses would provide an additional benefit to participants that was not guaranteed by the plan, so the plaintiff[] effectively challenged the plan's provision of benefits." *Russell*, 2026 WL 332662 at *3. Plaintiffs do not appear to make that argument here, and, indeed, clarify that they are challenging "Defendants' decisions regarding how to apply forfeited contributions after they have been paid to the Plan and have become plan assets." (Doc. 18 at 7, cleaned up.) Thus, the FAC plausibly alleges that Gen Digital's challenged action here, the allocation of forfeitures under the Plan, was done in a fiduciary rather than settlor capacity. *See also Fumich v. Novo Nordisk Inc.*, 2025 WL 2399134, *6 (D.N.J. 2025) ("Plaintiffs allege that Defendants acted disloyally by using forfeited funds to offset contributions instead of using the funds to pay for RKA costs and fees, which Plaintiffs and Plan participants had to pay. In the Motion, Defendants first argue that use of the forfeited funds to offset contributions was not a decision they made as fiduciaries, and thus, they cannot be liable for breaching a fiduciary duty. . . . The Court rejects Defendants' argument that they are not fiduciaries."); *Middleton v. Amentum Parent Holdings, LLC*, 2025 WL 2229959, *13 (D. Kan. 2025) ("Plaintiffs do not challenge the plan language but instead challenge Defendants' selection of one of the options under the Plan language. Thus, Plaintiffs attack not the decision to include the plan provision as a Plan term, but Defendants' implementation of that decision—that is, Defendants exercised discretion and control over Plan assets and thus were making decisions of Plan administration rather than Plan design. In other words, Plaintiffs challenge Defendants' choice of the options presented in the plan. Accordingly, the Court finds that Plaintiffs are challenging a fiduciary act.") (cleaned up); *Buescher v. N. Am. Lighting, Inc.,* 791 F. Supp. 3d 873, 889 (C.D. Ill. 2025) ("Defendants raise the same argument rejected in a number of

the cases discussed above, that Plaintiff is actually challenging a decision made in a settlor capacity, rather than a fiduciary capacity. . . . To be sure, when Defendants designed the 401(k) Plan, and in doing so directed that 'Forfeitures may be used to pay administrative expenses or to reduce Employer Contributions,' they were acting as settlors. But when the time came to actually exercise the discretion provided by the Plan, to determine whether forfeitures would be allocated toward Plan expenses or toward offsetting NAL's contributions, the decision was clearly made in a fiduciary capacity.") (citation omitted).

2. Breach Of Duty Of Prudence

a. **The Parties' Arguments**

Defendants argue that "Plaintiffs' forfeiture-based imprudence claim would fail even if they were plausibly challenging a fiduciary act." (Doc. 17 at 10.) Specifically, Defendants argue that "ERISA does not confer a duty on plan sponsors to 'make pension plans more valuable to participants' by paying plan expenses" and that "as the Ninth Circuit explained long ago, ERISA does not 'require a fiduciary to resolve every issue of interpretation in favor plan beneficiaries." (*Id.* at 10-11.) Citing *Sievert v. Knight-Swift Transportation Holdings, Inc.*, 780 F. Supp. 3d 870 (D. Ariz. 2025), and *Armenta v. WillScot Mobile Mini Holdings Corp.*, 2025 WL 2645518 (D. Ariz. 2025), Defendants contend that "[t]wo courts in this District have already rejected similar forfeiture-based imprudence claims on this basis" and argue that "[t]he reasoning of these cases applies equally here: the Plan permits the use of forfeitures to offset administrative expenses *or* to reduce employer matching contributions, and says nothing about 'the order in which this reallocation occurs.'" (*Id.* at 11, citations omitted.) Defendants also argue that "[n]umerous courts, in this Circuit and beyond, have dismissed substantially identical imprudence claims where the relevant plan terms permitted allocating forfeitures to employer contributions." (*Id.* at 12-13.)[7] Defendants argue that "Plaintiffs' bare-bones allegations that a 'conflict' improperly infected [Gen Digital]'s process for administering Plan

---

[7] Defendants' first and second notices of supplemental authority provide additional citations that they contend support their argument on this issue. (Docs. 23, 24.)

forfeitures cannot save them given [Gen Digital]'s absolute compliance with the Plan's permissive forfeiture provisions." (*Id.* at 13.) Defendants also argue that Plaintiffs "fail to allege 'specific facts' about a flawed or conflicted decision-making process in connection with reallocating forfeitures in any event." (*Id.*) Finally, Defendants argue that the FAC's "allegations concerning [Gen Digital]'s decision-making process rest entirely on [P]laintiffs' failure to procure process-related documents from the Plan administrator in connection with their pre-litigation request for documents" but that "the Plan administrator neither agreed nor had any obligation to produce materials reflecting internal deliberations or processes with respect to Plan matters" and "[t]he administrator's refusal . . . does not raise a plausible inference that the process was defective." (*Id.* at 13-14.)

In response, Plaintiffs argue that "[d]iscretion regarding plan assets is a fiduciary decision that must be made for the *exclusive* purpose of providing benefits to participants and their beneficiaries while *defraying reasonable expenses of administering the plan*." (Doc. 18 at 10, cleaned up.) Plaintiffs contend that "[d]iscretion in Plan language does not dilute these duties; it *heightens* them, including the imperative duty to avoid conflicts of interest" and that "[w]here conflicts exist, fiduciaries must conduct a 'thorough' and 'scrupulous' investigation and, where necessary, appoint a non-conflicted fiduciary." (*Id.*, cleaned up.) Plaintiffs argue that "[c]ourts, including in this Circuit, routinely uphold forfeiture claims where the fiduciaries had discretion and failed to prudently address their conflicts, finding that even if defendants had complied with the terms of the Plan Document, that alone would not excuse them from fulfilling their fiduciary duties under ERISA.'" (*Id.*, cleaned up.)[8] Plaintiffs argue that "[t]hese courts reject Defendants' strawman argument that plaintiffs seek a 'categorical rule' barring forfeitures from offsetting employer contributions, when in fact, the plaintiffs actually allege that fiduciary discretion in how to use forfeitures 'must be made in accordance with ERISA's fiduciary directives,' *i.e.*, the exclusive benefits rule based on the circumstances of '*in this particular*

[8] Plaintiffs' notice of supplemental authority provides additional citations that they contend support their argument on this issue. (Doc. 21.)

*case*.' (*Id.* at 11, cleaned up.) Plaintiffs further argue that "[u]nlike Defendants' cases, Plaintiffs allege far more than the mere existence of a conflict 'alone'" but rather "allege a complete absence of process and identify circumstances in which using forfeitures to offset employer contributions could be prudent, but allege those circumstances were not present here.'" (*Id.*) Plaintiffs also argue that "[a]nother key, particularized allegation that Defendants ignore is that the employer contributions were mandatory regardless of forfeitures." (*Id.* at 12.) Plaintiffs argue that "Defendants' remaining cases are . . . inapposite" because "Plaintiffs do not allege that fiduciaries must 'always' use forfeitures to pay administrative expenses." (*Id.* at 13.) Plaintiffs contend that they "are not bringing a claim that Defendants failed to produce documents. Yet it is telling that Defendants concede that 'materials reflecting internal deliberations or processes with respect to Plan' are not in Plaintiffs' possession. This undermines Defendants' position and . . . 'only heightens the fairness concern,' for Plaintiffs . . . are not required to rule out all of Defendants' potential explanations that would 'turn on facts one would expect to be in the fiduciary's possession.' (*Id.* at 14, cleaned up.) Finally, Plaintiffs argue that their "theory is also not that participants are entitled to more than the Plan permits." (*Id.*)

In reply, Defendants first argue that Gen Digital's "alleged 'conflict' does not raise a plausible inference of fiduciary breach" and that "[c]ourts have repeatedly held that this type of purported conflict, without more, does not plausibly suggest an imprudent process." (Doc. 20 at 4-5.) Defendants proceed to cite three additional district court cases that "have held that the decision to allocate forfeitures to offset future employer contributions fails to state a claim for breach of fiduciary duty where the relevant plan provision includes permissive language regarding the allocation of plan forfeitures (as the relevant Plan provision does here)." (*Id.* at 5, footnote omitted.) Defendants argue that "if [P]laintiffs' theory were correct, plan forfeitures could *never* be allocated to employer contributions that incidentally benefit the plan sponsor—the fiduciary would always be required to choose to pay administrative costs, a result that would stretch the fiduciary duties of loyalty and prudence beyond the law and create benefits beyond what was promised in the plan

itself." (*Id.* at 5-6, cleaned up.) Defendants contend that "Plaintiffs fail to meaningfully grapple with or distinguish" their cited authorities and that Plaintiffs' "imprudence claim" "allege[s] an inherent conflict, without any plausible, 'specific facts about the [D]efendant's alleged flawed processes when making decisions to reallocate forfeitures." (*Id.* at 6, cleaned up.) Defendants also argue that "while [Plaintiffs] invoke ERISA's 'exclusive purpose' rule for the first time in their opposition, they cannot 'avoid dismissal at the Rule 12(b)(6) stage by attempting to articulate an entirely new theory of liability in [their] motion papers that doesn't appear in the complaint itself'" and that "[t]he theory would fail as a matter of law anyway, as numerous courts have held." (*Id.* at 6 n.6, citation omitted.) As for the cases cited by Plaintiffs, Defendants argue that "these are outliers compared to the mountain of recent authority dismissing substantially identical forfeiture claims" and that "[t]hese dismissals from the majority of courts are also consistent with the position of the United States Department of Labor, which has recently argued in various amicus briefs that forfeiture claims just like [P]laintiffs' . . . are insufficient to state a claim for breach of fiduciary duty." (*Id.* at 7 & n.7.) Next, Defendants again argue that "Plaintiffs' failure to obtain process-related documents before filing suit does not plausibly suggest the absence of a prudent process." (*Id.* at 8.) Specifically, Defendants cite *Garner v. Northrop Grumman Corp.*, 2025 WL 3488657 (E.D. Va. 2025), and *Donelson v. Meijer, Inc.*, 826 F. Supp. 3d 898 (W.D. Mich. 2025), and argue that those cases "rejected identical forfeiture-based imprudence claims based on nearly *verbatim* allegations of a conflicted process" and that "Plaintiffs' claim that [Gen Digital] failed to adequately investigate the forfeiture allocation decision is similarly implausible here, as it is predicated exclusively on [P]laintiffs' lack of access to documents pricing otherwise." (*Id.* at 8-9.)

b. **Analysis**

ERISA subjects plan fiduciaries to "strict standards of . . . conduct," "most prominently, a standard of loyalty and a standard of care." *Cent. States, Se. & Sw. Areas Pension Fund v. Cent. Transp., Inc.*, 472 U.S. 559, 570 (1985). The former requires a plan fiduciary to act "solely in the interest of the participants and beneficiaries and . . . for the

exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan." 29 U.S.C. § 1104(a)(1)(A). The latter requires a plan fiduciary to "discharge his duties with respect to a plan . . . with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." *Id.* § 1104(a)(1)(B). Count Three only asserts a claim against Gen Digital under § 1104(a)(1)(B)—the duty of prudence. (Doc. 11 at 25.)[9]

The Court does not operate on a blank slate when assessing the viability of this theory. In January 2025, one publication observed that "[s]ince the fall of 2023, plaintiffs have filed more than 30 class action lawsuits alleging that the use of 401(k) forfeitures to offset future employer contributions violates several [ERISA] provisions, including the fiduciary duties of loyalty and prudence and ERISA's anti-inurement provision." Monica I. Perkowski et al., *Expert Insights—an Emerging Trend In ERISA Class Action Litigation: 401(k) Forfeiture Suits*, Wolters Kluwer Emp. L. Daily, 2025 WL 339400 (Jan. 30, 2025). That number has only continued to grow in the last year and a half. *See also Donelson*, 826 F. Supp. 3d at 904 n.2 ("Courts have considered claims essentially identical to these in at least 24 cases, and have only allowed them to proceed in 5.") (collecting cases).

The FAC alleges that Gen Digital breached its fiduciary duty of prudence by "fail[ing] to employ a prudent process for the administration and use of Plan forfeitures." (Doc. 11 ¶ 125.) The FAC alleges that Gen Digital "did not, for example, investigate whether there was a risk that [Gen Digital] would be unable to satisfy its contribution obligations if forfeitures were used to pay Plan expenses, or evaluate whether there were

---

[9] To the extent Plaintiffs' response brief attempts to assert a claim under § 1104(a)(1)(A) for breach of the duty of loyalty by arguing that "[d]iscretion regarding plan assets is a fiduciary decision that must be made for the exclusive purpose of providing benefits to participants and their beneficiaries" (Doc. 18 at 10, cleaned up), the Court agrees with Defendants that Plaintiffs may not "avoid dismissal at the Rule 12(b)(6) stage by attempting to articulate an entirely new theory of liability in [their] motion papers that doesn't appear in the [FAC] itself." *Sobh v. Phoenix Graphix Inc.*, 2019 WL 3973697, *3 (D. Ariz. 2019).

sufficient forfeitures to eliminate the Plan's expenses charged to participants and still offset a portion of [Gen Digital]'s own contribution obligations, as a prudent person would have done," nor did Gen Digital "consult with an independent, non-conflicted decision-maker, or an independent fiduciary, to advise it in deciding upon the best course of action for allocating the forfeitures in the Plan, as a prudent person would have done." (*Id.* ¶¶ 101-02.) And the FAC alleges that Gen Digital "did not analyze, evaluate, or otherwise consider how forfeiture amounts should be applied for the exclusive benefit of Plan participants and beneficiaries." (*Id.* ¶ 125.)

Although "[a] Plan's trustees' conflicts of interests can violate" the duty of prudence, the majority of courts, including two in this District, "have found that this conflict of interest alone [is] insufficient to breach the duty of prudence." *Armenta*, 2025 WL 2645518 at *5 (collecting cases). *See also Sievert*, 780 F. Supp. 3d at 879 ("[T]his Court will rule in accordance with the court in *Hutchins* and other courts finding that a plan sponsor's decision to allocate forfeitures toward reducing its own employer contributions, without more, is not sufficient to state a claim for a breach of fiduciary duty of loyalty or prudence under ERISA.").

Plaintiffs attempt to distinguish these decisions by arguing that the FAC "allege[s] far more than the mere existence of a conflict 'alone'" and "do[es] not allege that fiduciaries must 'always' use forfeitures to pay administrative expenses." (Doc. 18 at 11, 13.) But beyond the general allegations discussed above, the FAC fails to allege specific facts as to what was actually imprudent in Gen Digital's process. The majority of courts faced with such allegations have dismissed them. *See, e.g.*, *Polanco v. WPP Grp. USA, Inc.*, 2026 WL 1099370, *3-4 (S.D.N.Y. 2026) ("There must be specific facts alleged that invite the inference that the fiduciary actually engaged in imprudent conduct. . . . But allegations that the Plan Committee must have lacked a prudent process because it did not use Forfeitures in the way that the plaintiffs would have liked are not sufficient circumstantial allegations. Plausibly alleging a failure to fulfill the duty of prudence still requires more than simply *speculating* that an ERISA fiduciary might not have conducted

the requisite inquiry.") (cleaned up); *Beroset v. Duke Univ.*, 2026 WL 765518, *2 (M.D.N.C. 2026) ("Conclusory allegations about 'reflexively' making decisions about the forfeited contributions, 'imprudent coordination' with Duke, 'flawed decision-making process,' and the like are insufficient to state a claim."); *Donelson*, 826 F. Supp. 3d at 903-04 (dismissing prudence claim where the plaintiffs alleged that the defendant's "use of forfeitures violated its duty of prudence because [the defendant] 'did not . . . investigate whether there was a risk that [the defendant] would default on its Plans' contributions if forfeitures were used to pay Plans' administrative expenses, or evaluate whether there were sufficient forfeitures to eliminate the Plans' administrative expenses charged to participants and still offset a portion of [defendant]'s own contribution obligations,' or 'consult with independent non-conflicted decisionmakers to advise them in deciding upon the best course of action for allocating the forfeitures in the Plans'"); *Armenta*, 2025 WL 2645518 at *5 (dismissing allegation that defendant "violated its duty of prudence by improperly exercising discretion and control over the forfeitures by using an imprudent and flawed process because [defendant] failed to undertake any reasoned and impartial decision-making process for reallocating the forfeitures to reduce [defendant]'s own contribution expenses instead of paying for administrative expenses" as "only . . . a general statement that [defendant] violated the duty of prudence") (cleaned up); *Hutchins II*, 767 F. Supp. 3d at 926-27 (finding the plaintiff's allegations that the defendants "used a flawed process in deciding how to allocate the forfeitures," without any specific facts, conclusory and insufficient to state a claim for breach of the fiduciary duty of prudence).

Nor is there any merit to Plaintiffs' contention that because "materials reflecting internal deliberations or processes with respect" to the Plan "are not in Plaintiffs' possession," Defendants' position is somehow "undermine[d]." (Doc. 18 at 14.) Although "facts detailing the investigative process are likely within the sole control of the trustee and other ERISA defendants," "the plaintiff *does* need to plead details supporting an inference that the defendant failed to conduct an adequate inquiry." *Hutchins II*, 767 F. Supp. 3d at 927 (cleaned up).

Accordingly, Plaintiffs have failed to state a claim under § 1104(a)(1)(B) and Count Three is dismissed.

B. **Monitoring (Count Four)**

In Count Four of the FAC, Plaintiffs allege that Gen Digital and the Board "breached their fiduciary monitoring duties by, among other things, failing to monitor and evaluate the performance of the Committee . . . or have a system in place for doing so, and standing idly by as the Plan suffered significant losses as a result of the [Committee's] imprudent actions and omissions." (Doc. 11 ¶ 133.) In their response brief, Plaintiffs acknowledge that Count Four is "derivative" of their "underlying claim for breach of the duty of prudence." (Doc. 18 at 15.)

"A failure to monitor claim is only viable when there is an underlying claim for breach of fiduciary duty. Because Plaintiffs failed to state a claim for breach of the fiduciary dut[y] of . . . prudence, their derivative monitoring claim must also fail." *Sievert*, 780 F. Supp. 3d at 881 (cleaned up). *See also Polanco v. WPP Grp. USA*, 2025 WL 3003060, *11 (S.D.N.Y. 2025) ("Because the plaintiffs failed to state breach-of-fiduciary-duty or prohibited-transaction claims, their derivative monitoring claim . . . is also dismissed."). Accordingly, Count Four is dismissed.[10]

III. <u>Leave To Amend</u>

In their response, Plaintiffs "respectfully request" that the Court grant leave to amend in the event of dismissal. (Doc. 18 at 16.) Defendants do not appear to object. (*See generally* Docs. 17, 20.) "Rule 15 advises the court that 'leave [to amend] shall be freely given when justice so requires.'" *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003). "This policy is 'to be applied with extreme liberality.'" *Id.* (citation omitted). As such, Plaintiffs' amendment request is granted.

…

…

[10] This conclusion makes it unnecessary to address the parties' remaining arguments concerning Count Four.

Accordingly,

**IT IS ORDERED** that:

1. Defendants' motion to dismiss (Doc. 17) is **granted**. Counts Three and Four of the FAC are dismissed.

2. Plaintiffs may file a Second Amended Complaint ("SAC") within 14 days of the issuance of this order. Any changes shall be limited to attempting to rectify the deficiencies identified in this order. Plaintiffs shall, consistent with LRCiv 15.1, attach a redlined version of the pleading as an exhibit.

Dated this 17th day of August, 2026.

Dominic W. Lanza
United States District Judge